**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| *Brian Lumbus, Jr.,* | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 1:25-cv-00190 |
| | ) | |
| v. | ) | Judge Pamela A. Barker |
| | ) | |
| *Huntington Bank, et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT EARLY WARNING SERVICES, LLC'S
MOTION TO DISMISS COMPLAINT**

Defendant Early Warning Services, LLC ("EWS") hereby moves the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint filed by Plaintiff Brian Lumbus, Jr., on the grounds that the Complaint fails to state a claim upon which relief can be granted against EWS. Each of Plaintiff's claims against EWS fails as a matter of law and should be dismissed without leave to amend.

This Motion is based on the accompanying Memorandum of Points and Authorities attached hereto, the concurrently filed Request for Judicial Notice, the pleadings, records and files in this action and such further oral or documentary evidence and argument as may be presented at or before the hearing and any other matter the Court may deem appropriate.

Dated: February 7, 2025

Respectfully submitted,

/s/ *Marisa T. Darden*

**Benesch Friedlander Coplan & Aronoff LLP**
Marisa T. Darden
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Telephone: 216-363-4440
Facsimile: 216-363-4588
Email: MDarden@beneschlaw.com

**STEPTOE LLP**
Christopher R. Fredrich (*pro hac vice* forthcoming)
cfredrich@steptoe.com
2029 Century Park East, Suite 980
Los Angeles, California 90067-3086
Telephone: (213) 439-9400
Facsimile: (213) 439-9598
Email: docketing@steptoe.com

Jamie Noonan Witte (*pro hac vice* forthcoming)
jwitte@steptoe.com
227 West Monroe, Suite 4700
Chicago, IL  60606
Telephone: (312) 577-1300

*Attorneys for Defendant Early Warning Services, LLC*

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| *Brian Lumbus, Jr.,* | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 1:25-cv-00190 |
| | ) | |
| v. | ) | Judge Pamela A. Barker |
| | ) | |
| *Huntington Bank, et al.,* | ) | |
| | ) | |
| Defendants. | ) | |


**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT**
**EARLY WARNING SERVICES, LLC'S MOTION TO DISMISS COMPLAINT**

**TABLE OF CONTENTS**

STATEMENT OF ISSUES TO BE DECIDED ............................................................................. V

I.     SUMMARY OF THE ARGUMENT ................................................................. 1

II.    BACKGROUND ......................................................................................... 3

      A.    Allegations of Plaintiff's Complaint. ........................................................ 3

      B.    Zelle® Service Addendum Between Plaintiff and Huntington. ............................. 4

III.   ARGUMENT ............................................................................................ 5

      A.    Legal Standard on a Motion to Dismiss. .................................................. 5

      B.    Plaintiff's EFTA Claim Fails as a Matter of Law. ......................................... 5

      C.    Plaintiff's OCSPA Claim Likewise Fails as a Matter of Law. ............................. 8

      D.    Plaintiff's Negligence Claim Also Fails as a Matter of Law. ............................. 10

            (i)    EWS Does Not Owe Plaintiff a Duty of Care. ........................................... 10

            (ii)   EWS Did Not Cause Plaintiff's Alleged Loss. ......................................... 13

            (iii)  Ohio's Economic Loss Rule Bars Plaintiff's Negligence Claim. ..................................................................................... 14

IV.   CONCLUSION ....................................................................................... 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Barclay's Cap. Real Est., Inc.*,
2013-Ohio-1933, 136 Ohio St. 3d 31, 989 N.E.2d 997 ........................................................8, 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................................................5

*Barnett v. Beazer Homes Invs., L.L.C.*,
180 Ohio App. 3d 272 (2008) ..............................................................................................11

*Basar v. Steel Serv. Plus*,
No. 77091, 2000 WL 502875 (Ohio Ct. App. Apr. 27, 2000)..................................................11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................................5

*Bennett v. Biernacki*,
2022-Ohio-4449, 204 N.E.3d 39............................................................................................10

*Bibicheff v. PayPal, Inc.*,
No. 2:17-cv-4679 (DRH)(AYS), 2020 WL 2113373 (E.D.N.Y. May 4, 2020)
*aff'd*, 844 F. App'x 394 (2d Cir. 2021)...................................................................................12

*Big Red Box, LLC v. Square, Inc.*,
No. CV 3:18-758-SAL-SVH, 2020 WL 465928 (D.S.C. Jan. 22, 2020) ...............................12

*Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*,
106 Ohio St. 3d 412, 2005-Ohio-5409, 835 N.E.2d 701 ............................................14, 15, 16

*Dooley v. Wells Fargo Bank, Nat. Ass'n*,
941 F. Supp. 2d 862 (S.D. Ohio 2013) .....................................................................................8

*Ests. of Morgan v. Fairfield Fam. Counseling Ctr.*,
1997-Ohio-194, 77 Ohio St. 3d 284, 673 N.E.2d 1311 (1997) ........................................10, 11

*Gale v. Hyde Park Bank*,
No. 02 C 3663, 2007 WL 2358625 (N.D. Ill. Aug. 8, 2007)......................................................7

*Godwin v. Facebook, Inc.*,
2020-Ohio-4834, 160 N.E.3d 372...........................................................................................11

*Grant v. Spann*,
2015-Ohio-831 .......................................................................................................................11

ii

*Lang v. Holly Hill Motel, Inc.*,
    122 Ohio St. 3d 120 (2009)........................................................................................10

*Lee v. Javitch, Block & Rathbone, LLP*,
    522 F. Supp .2d 945, 956 (S.D. Ohio 2007) ..............................................................9

*Long v. Time Ins. Co.*,
    572 F. Supp. 2d 907 (S.D. Ohio 2008) ....................................................................15

*Meisner v. JPMorgan Chase Bank, N.A.*,
    No. 220CV01766KJMCKD, 2020 WL 7024212 (E.D. Cal. Nov. 30, 2020) ..........13

*Moore v. Covenant Care Ohio, Inc.*,
    2014-Ohio-4113, 18 N.E.3d 1260, *cause dismissed,* 2015-Ohio-1332, 142
    Ohio St. 3d 1418, 28 N.E.3d 119.............................................................................11

*Pavlovich v. Nat'l City Bank*,
    435 F.3d 560 (6th Cir. 2006) ...................................................................................15

*Portnoy v. Nat'l Credit Sys., Inc.*,
    837 F. App'x 364 (6th Cir. 2020) ..............................................................................9

*Potts v. Safeco Ins. Co.*,
    2010-Ohio-2042........................................................................................................14

*Rieger v. Giant Eagle, Inc.*,
    2019-Ohio-3745, 157 Ohio St. 3d 512, 138 N.E.3d 1121 ..................................13, 14

*RLFShop, LLC v. Am. Express Co.*,
    No. 3:17-cv-405, 2018 WL 4030544 (S.D. Ohio Aug. 23, 2018) ...........................12

*Ross v. Nutt*,
    177 Ohio St. 113, 203 N.E.2d 118 (1964) ...............................................................13

*RWP, Inc. v. Fabrizi Trucking & Paving Co.*,
    2006-Ohio-5014 (8th Dist.) ......................................................................................15

*Slagle v. White Castle Sys., Inc.*,
    79 Ohio App.3d 210, 607 N.E.2d 45 (10th Dist.1992).............................................11

*Spivak v. Huntington Nat'l Bank*,
    No. 1:20 CV 1244, 2020 WL 6162586 (N.D. Ohio Oct. 21, 2020)..........................15

*Stewart v. IHT Ins. Agency Grp., LLC*,
    990 F.3d 455 (6th Cir. 2021) .....................................................................................5

iii

*Tristan v. Bank of Am.*,
No. SACV2201183DOCADS, 2023 WL 8168848 (C.D. Cal. Oct. 26, 2023),
*reconsideration denied,* No. SACV2201183DOCADS, 2023 WL 8945714
(C.D. Cal. Dec. 5, 2023) ................................................................................................6

*Wells Fargo Bank, N.A. v. Fifth Third Bank*,
931 F. Supp. 2d 834 (S.D. Ohio 2013) .......................................................................14

*Wise v. Zwicker & Assocs., P.C.*,
780 F.3d 710 (6th Cir. 2015) ........................................................................................9

**Statutes**

15 U.S.C. § 1693a(9) ..........................................................................................................6

15 U.S.C. § 1693f(a) ...........................................................................................................7

15 U.S.C. § 1693m(g) .....................................................................................................1, 7

Electronic Fund Transfer Act, 15 U.S.C. § 1693, *et seq.*...................................... *passim*

Ohio Consumer Sales Practice Act, Ohio Revised Code § 1345.01, *et seq.* ......... *passim*

Ohio Rev. Code § 5725.01(A) ............................................................................................8

**Other Authorities**

12 C.F.R. § 205.11(b)(1)(i) ................................................................................................7

12 C.F.R. § 1005.2(i) .........................................................................................................6

Federal Rule of Civil Procedure 12(b)(6) ......................................................................1, 5

**STATEMENT OF ISSUES TO BE DECIDED**

**Issue 1**: Whether Plaintiff's claim for an alleged violation of the Electronic Fund Transfer Act, 15 U.S.C. § 1693, *et seq.* ("EFTA"), fails as to EWS because EWS is not a "financial institution" within the meaning of the statute.

**Issue 2**: Whether Plaintiff's EFTA claim otherwise fails because it is time-barred by the one-year statute of limitations under 15 U.S.C. § 1693m(g) and because Plaintiff does not allege providing EWS with any notice that would trigger obligations under the EFTA even if it applied to EWS.

**Issue 3**: Whether Plaintiff's claim for an alleged violation of the Ohio Consumer Sales Practice Act, Ohio Revised Code § 1345.01, *et seq.* ("OCSPA"), fails because it does not apply to the conduct or transactions alleged in the Complaint.

**Issue 4**: Whether Plaintiff's OCSPA claim otherwise fails because Plaintiff does not allege any unfair or deceptive conduct by EWS.

**Issue 5**: Whether Plaintiff's claim for negligence fails because EWS does not owe Plaintiff a duty of care.

**Issue 6**: Whether Plaintiff's claim for negligence fails because Plaintiff does not plausibly allege that EWS caused his alleged harm.

**Issue 7**: Whether Plaintiff's negligence claim is barred by the economic loss rule.

## I.     SUMMARY OF THE ARGUMENT

Plaintiff Brian Lumbus, Jr. ("Plaintiff") purports to assert claims against defendants Huntington Bank ("Huntington") and Early Warning Services, LLC ("EWS") (collectively, "Defendants") related to allegedly unauthorized Zelle® transactions from his Huntington checking account.  According to Plaintiff, his ex-girlfriend Talanda Woods, whom Plaintiff does not name as a party, stole his Huntington bank account information from his grandmother's house and made ten unauthorized payments between October 2023 and March 2024 from Plaintiff's checking account at Huntington totaling $5,280.30 via Zelle (a payment service owned by EWS, which Huntington provides to its customers through its mobile and online banking applications).  Plaintiff alleges that Defendants are liable for failing to reimburse him for the purportedly unauthorized transactions, and asserts claims against both Defendants for: (1) violation of the Electronic Fund Transfer Act, 15 U.S.C. § 1693, *et seq.* ("EFTA"); (2) violation of the Ohio Consumer Sales Practice Act, Ohio Revised Code § 1345.01, *et seq.* ("OCSPA"); and (3) negligence.[1]

As detailed herein, all of Plaintiff's claims against EWS are fundamentally flawed and misdirected, and should be dismissed without leave to amend.  First, EWS is not liable under the EFTA as a matter of law.  EWS is not a "financial institution" under the EFTA or Regulation E with respect to Zelle transactions made from Plaintiff's checking account at Huntington because EWS did not provide that (or any other) account to Plaintiff, did not enter into any agreement with Plaintiff to provide electronic fund transfer services, did not issue an access device for his Huntington checking account, and did not make the transfers at issue.  Determinations as to whether the Zelle transactions at issue were authorized or unauthorized were made solely by Huntington, and any alleged reimbursement obligations under the EFTA or Plaintiff's deposit

---

[1] Plaintiff also asserts a claim for breach of contract against Huntington only.

account agreement with Huntington would be Huntington's responsibility. Simply put, Huntington's purported failure to reimburse Plaintiff for the allegedly unauthorized transactions has nothing to do with EWS.

Even if the EFTA were to apply to EWS for the transactions at issue (which it does not), Plaintiff's EFTA claim against EWS fails for the independent reasons that: (1) Plaintiff does not allege that he provided EWS with any notice, and (2) Plaintiff's EFTA claim as to the seven alleged Zelle transactions in October and November 2023 is time-barred by the EFTA's one-year statute of limitations because Plaintiff did not file his lawsuit until December 24, 2024. Plaintiff's EFTA claim against EWS is without merit and should be dismissed with prejudice.

Second, Plaintiff's OCSPA claim likewise fails as a matter of law. Ohio law is clear that the OCSPA does not apply to transactions between financial institutions and their customers, and that corollary services thereof are likewise excluded. Second, even if the OCSPA were to apply (which it does not), Plaintiff fails to state a claim against EWS under the OCSPA for the same reasons that his EFTA claim fails. As set forth above, Huntington maintains Plaintiff's account and transferred the money at issue. Simply put, the Complaint does not allege any deceptive or unfair conduct on behalf of EWS.

Finally, Plaintiff's attempt to assert a claim against EWS for negligence is equally unavailing. EWS provided services to Huntington but had no contractual or other relationship with Plaintiff. Plaintiff does not and cannot identify any duty owed to him by EWS under Ohio law, much less the kind of "special relationship" required to state a negligence claim. Plaintiff also does not and cannot allege that any conduct by EWS caused his alleged losses; rather, any losses were caused by the alleged unlawful conduct of his ex-girlfriend Talanda Woods. Even if

Plaintiff had otherwise stated a claim for negligence against EWS (which he has not), his negligence claim is barred by Ohio's economic loss rule.

As amply demonstrated herein, EWS has no liability to Plaintiff as a matter of law and EWS respectfully requests that the Court grant this Motion in its entirety and without leave to amend.

## II.  BACKGROUND

### A.  Allegations of Plaintiff's Complaint.

Plaintiff, who holds a checking account at Huntington, alleges that on or about December 2, 2023, he noticed and reported to Huntington a series of allegedly unauthorized Zelle transactions.  Compl. ¶ II.1.  Plaintiff does not identify how many transactions he allegedly reported, the dates they occurred, or the amounts of the transactions.  Plaintiff contends that he informed Huntington that he was incarcerated, could not access his account via a computer, and that the use of Zelle to transfer funds was fraudulent.  *Id*. at ¶¶ II.1 & II.2.  Huntington initiated an investigation but denied Plaintiff's dispute.  *Id*. at ¶ II.4.  Plaintiff contends that he challenged the denial but that the decision to deny his claim was reaffirmed on two occasions.  *Id*.

 Plaintiff alleges he initiated a second dispute related to three additional Zelle transactions on or about March 28, 2024.  Plaintiff contends that after overdrawing on his account, he reported the following three Zelle transactions to Huntington as fraudulent, but that his dispute was again denied: March 21, 2024 in the amount of $1,000, March 22, 2024 in the amount of $1,000, and March 25, 2024 in the amount of $803.75.  *Id*. ¶¶ II.5 – II.7.

Plaintiff alleges that after the second dispute was denied, he informed Huntington that he recognized one of the phone numbers involved in the transactions as belonging to Talanda Woods, an ex-girlfriend, and that he believed she "stole his account information from his 93-year-old grandmother's house."  *Id*. at ¶¶ II.7 – II.8.  He states that a further investigation by Huntington

3

revealed that Ms. Woods "had removed [his] grandmother's phone number from his account in September 2023, replacing it with her own" and thereafter began engaging in fraudulent Zelle transactions.  Compl. at ¶ II.9.  Plaintiff claims that despite this "clear evidence of fraud," Defendants have not reimbursed him for ten allegedly unauthorized Zelle transactions totaling $5,280.30.  *Id*. at II.10 & IV.1.

**B.      Zelle® Service Addendum Between Plaintiff and Huntington.**

Plaintiff's enrollment in and use of Zelle in connection with his Huntington checking account is subject to agreements and terms of use between Plaintiff and Huntington, not EWS. Zelle is an instant payment service owned by EWS and offered to participating banks (including Huntington) to facilitate payments between the banks.  *See generally* Request for Judicial Notice ("RJN") Exs. 1 & 2.  Participating banks offer bank-to-bank transfer service via Zelle to their customers through the banks' online or mobile banking applications.  *Id*.  Huntington's use of Zelle for customer accounts such as Plaintiff's is governed by the Zelle® Service Addendum (the "Service Addendum").  *Id*., Ex. 2.

The Service Addendum makes clear that Zelle only provides network services to financial institutions such as Huntington, and does not hold accounts or transfer funds.  Section 3, titled "Eligible Accounts," states, "To use the Service, you must have an eligible Account."  *Id*., Ex. 2 § 3.  And Section 1 defines "Account" as "eligible Huntington account . . . which you can transfer money from or receive money into."  *Id*. § 1.  Nothing in the agreement says or suggests that Zelle holds any customer accounts.  Further, Section 2 of the Service Addendum, titled "Overview of the Service," expressly states, "***Zelle® does not transfer the money***, but rather transmits the required messages between Users, using identifiers such as email addresses or phone numbers, ***which enables financial institutions to facilitate the Money Transfer***."  *Id*. § 2 (emphasis added).

Section 15 of the Service Agreement, entitled "Limitation of Liability," provides that neither Huntington nor Zelle is liable for ***authorized*** transfers of funds:

> UNLESS OTHERWISE PROVIDED BY LAW, YOU AGREE THAT YOU, NOT WE OR ZELLE®, ARE RESPONSIBLE FOR RESOLVING ANY PAYMENT OR OTHER DISPUTES THAT YOU HAVE WITH ANY OTHER USER WITH WHOM YOU SEND MONEY TO, OR RECEIVE OR REQUEST MONEY FROM, USING THE SERVICE.

*Id*. § 15.  By contrast, liability for ***unauthorized*** transfers is addressed in section 14 of the Service Agreement, which generally provides that Huntington will not hold customers liable for unauthorized transactions, subject to certain conditions.  *Id*. § 14.

Finally, section 11 of the Service Agreement advises: "Requests for money are solely between the Users and are not reviewed or verified by us or by Zelle®."  *Id*. § 11.

### III.     ARGUMENT

#### A.     Legal Standard on a Motion to Dismiss.

To survive a Rule 12(b)(6) motion, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint should be dismissed under Rule 12(b)(6) "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  While the court must accept as true all factual allegations, it should exclude any "conclusory statements" or "[t]hreadbare recitals of the elements."  *Id*., 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Where it would be futile to amend the complaint's deficiencies, dismissal may be ordered with prejudice.  *Stewart v. IHT Ins. Agency Grp., LLC*, 990 F.3d 455, 457 n.1 (6th Cir. 2021).

#### B.     Plaintiff's EFTA Claim Fails as a Matter of Law.

The EFTA imposes error resolution obligations only on entities that qualify as "financial institutions" with respect to a given transaction.  Because EWS did not act as a "financial

institution" in connection with the Zelle transactions at issue, Plaintiff's EFTA claim is defeated as a matter of law.

The EFTA defines a "financial institution" as "a State or National bank, a State or Federal savings and loan association, a mutual savings bank, a State or Federal credit union, or any other person who, directly or indirectly, holds an account belonging to a consumer."  15 U.S.C. § 1693a(9).  Regulation E defines the term somewhat more broadly, to include "a bank, savings association, credit union, or any other person that directly or indirectly holds an account belonging to a consumer, or that issues an access device and agrees with a consumer to provide electronic fund transfer services."  12 C.F.R. § 1005.2(i).

In *Tristan v. Bank of Am.*, No. SACV2201183DOCADS, 2023 WL 8168848, at *5-6 (C.D. Cal. Oct. 26, 2023), *reconsideration denied,* No. SACV2201183DOCADS, 2023 WL 8945714 (C.D. Cal. Dec. 5, 2023), the court addressed whether EWS was a "financial institution" subject to the requirements of the EFTA, and found that it was *not*.  *Id*. at *5-6.  In that case, plaintiffs sought to hold EWS liable for allegedly unauthorized payments from their Bank of American accounts via Zelle.  The court found that plaintiffs could *not* allege either that "EWS either directly or indirectly holds an account belonging to a consumer" or that "EWS issued access devices."  *Id*. at *5.  As such, plaintiffs failed to allege that EWS was a "financial institution" subject to the EFTA, and plaintiffs' claims were dismissed with prejudice.  *Id*. at *6.

The same is indisputably true here.  First, Plaintiff's allegations do not involve the use of a "Zelle account," as his Service Addendum with Huntington makes clear.  RJN Ex. 2 §§ 1-3.  Nor did EWS issue an access device, enter into any agreement with Plaintiff to provide electronic fund transfer services, or engage in the electronic transfer of funds, and Plaintiff does not allege otherwise.  *Id*.; *see generally* Compl.  Instead, Plaintiff's relationship was with Huntington: his

agreement was with Huntington; his account was with Huntington; any access devices to make transactions from his Huntington checking account would be issued by Huntington; the funds at issue were transferred from Plaintiff's account at Huntington; and the money at issue was transferred by Huntington, not EWS. *Id.* Because EWS did not act as a "financial institution" within the meaning of the EFTA, Plaintiff's EFTA claim fails as a matter of law and must be dismissed.

Second, even if the EFTA applied to EWS (which it does not), Plaintiff's EFTA claim fails because it is time-barred (at least in part) by the one-year statute of limitations under 15 U.S.C. § 1693m(g), and Plaintiff does not allege that he provided EWS with the requisite notice under 15 U.S.C. § 1693f(a). Plaintiff purports to challenge seven Zelle transactions made in October and November 2023 totaling $2,476.55. Compl. ¶ II.9. Any claim based on these transactions is untimely because the EFTA imposes a strict one-year statute of limitations that is measured from "the date of the occurrence of the violation." 15 U.S.C. § 1693m(g). Moreover, any obligation under the EFTA to investigate (and reimburse allegedly unauthorized transactions if such claims are substantiated) is triggered by a customer giving timely notice to his or her financial institution. 15 U.S.C. § 1693f(a); 12 C.F.R. § 205.11(b)(1)(i); *see also Gale v. Hyde Park Bank*, No. 02 C 3663, 2007 WL 2358625, at *2 (N.D. Ill. Aug. 8, 2007) ("A financial institution shall comply with the requirements for resolving errors with respect to any oral or written notice of error from the consumer that is received by the institution no later than sixty days after the institution sends the periodic statement on which the alleged error is first reflected." (citing 12 C.F.R. § 205.11(b)(1)(i))). While Plaintiff alleges that he provided notice to his financial institution (Huntington) of allegedly unauthorized transactions on or about December 2, 2023 and again on

7

or about March 28, 2024, he *does not* allege that he disputed the transactions with EWS.  *See generally* Compl.

For each of these reasons, the EFTA claim fails against EWS and should be dismissed without leave to amend.

### C.  Plaintiff's OCSPA Claim Likewise Fails as a Matter of Law.

Plaintiff's claim for alleged violation of the OCSPA fares no better.  The OCSPA provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction.  Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."  R.C. § 1345.02(A); *Anderson v. Barclay's Cap. Real Est., Inc.*, 2013-Ohio-1933, ¶ 8, 136 Ohio St. 3d 31, 33, 989 N.E.2d 997, 999 (Ohio 2013).  Transactions between consumers and financial institutions are excluded from the definition of "consumer transaction" under OCSPA.  R.C. §§ 1345.01(A), 1345.02, 5725.01(A); *Dooley v. Wells Fargo Bank, Nat. Ass'n*, 941 F. Supp. 2d 862, 869 (S.D. Ohio 2013) (dismissing OCSPA claim against mortgagee Wells Fargo because it is a financial institution and transactions with financial institutions are exempted from OCSPA).

First, Plaintiff's OCSPA claim fails because OCSPA does *not* apply to the conduct alleged in the Complaint.  Ohio law is clear that a "collateral service" rendered in connection with exempted transactions is not subject to OCSPA.  *Anderson*, 136 Ohio St. 3d at 35.  The Ohio Supreme Court's opinion in *Anderson* is instructive.  *Id*.  There, the Ohio Supreme Court considered the certified question of whether "the servicing of a borrower's residential mortgage loan constitutes a 'consumer transaction,'" and concluded that "it does not."  *Id*. at 34.  Like transactions with financial institutions, real estate transactions are excluded from OCSPA's definition of "consumer transaction."  *Id*.  In finding that the provision of "collateral services" for exempted transactions does not amount to a "consumer transaction," the Court reasoned that the

8

mortgage servicer's agreement was with and services were provided to the financial institution, not consumers, even though the service involved consumers.  *Anderson*, 136 Ohio St. 3d at 36 ("The statute simply cannot be read to cover instances in which a financial institution contracts with an entity to service its loans and mortgages.").

The same is true here.  EWS acts only as a network for payments between participating banks and has no direct relationship, contractual or otherwise, with Plaintiff.  By facilitating bank-to-bank transfers via Zelle, EWS is providing a "collateral service" to financial institutions, which also falls outside of OCSPA.  *See Wise v. Zwicker & Assocs., P.C.*, 780 F.3d 710, 719 (6th Cir. 2015) (upholding dismissal of OCSPA claim against two lawyers and their firm working to collect outstanding credit card debt on behalf of financial institution because the underlying agreement was with and the debt was owned by the financial institution and thus not a "consumer transaction" under the OCSPA); *Lee v. Javitch, Block & Rathbone, LLP*,  522 F. Supp .2d 945, 956 (S.D. Ohio 2007) (stating the OCSPA "specifically excludes transactions between financial institutions and their customers" and that if law firm was acting on behalf of financial institution in connection with a consumer transaction, the OCSPA would not apply); *Portnoy v. Nat'l Credit Sys., Inc.*, 837 F. App'x 364, 371 (6th Cir. 2020) (affirming dismissal of OCSPA claims against third party debt collector and landlord's lawyer because the underlying transaction was a residential lease, which is not a "consumer transaction" under OCSPA).  The fact that Zelle transfers may involve consumers does not turn them into "consumer transactions" under OCSPA.  *See Anderson*, 136 Ohio St. 3d at 35.  Because the conduct alleged in the Complaint does not involve a consumer transaction, Plaintiff's OCSPA claim fails as a matter of law, and should be dismissed without leave to amend.

Second, even if the OCSPA applies (which it does not), Plaintiff does not plausibly allege any unfair or deceptive act by EWS. Plaintiff asserts that "Defendants" violated the OCSPA by "denying Plaintiff's legitimate claims for reimbursement of funds fraudulently taken from his account[.]" Compl. ¶ III.12. First, as set forth above, Plaintiff has not alleged that he initiated a dispute with EWS for any of the allegedly fraudulent transactions. However, even if he had, Plaintiff's OCSPA claim is derivative of his EFTA claim and, as discussed above, EWS has no obligation by agreement or law to reimburse Plaintiff for transactions he claims to be unauthorized. EWS does not maintain the account in question and did not transfer the at issue funds; the account is maintained and the funds transferred by Huntington. To the extent any such obligation to reimburse exists, it is an issue between Plaintiff and Huntington, not EWS.

### D. Plaintiff's Negligence Claim Also Fails as a Matter of Law.

The elements of a claim for negligence are: (1) defendant owed plaintiff a legal duty of care; (2) defendant breached that duty; and (3) defendant's breach proximately caused plaintiff to be injured. *Lang v. Holly Hill Motel, Inc.*, 2009-Ohio-2495, ¶¶ 6-11, 122 Ohio St. 3d 120, 122-23, 909 N.E.2d 120, 122-23 (Ohio 2009). As detailed below, Plaintiff's negligence claim against EWS fails as a matter of law for three independent reasons. First, Plaintiff does not and cannot allege facts establishing that EWS owed him a duty of care. Second, even if EWS were to owe Plaintiff a duty of care (which it does not), Plaintiff does not allege that EWS's breach of said duty caused him any harm. Third, even if Plaintiff had otherwise stated a negligence claim against EWS (which he has not), his claim is barred by Ohio's economic loss rule.

#### (i) EWS Does Not Owe Plaintiff a Duty of Care.

Establishing the "existence of a duty is fundamental" to stating an actionable claim for negligence, "without which there is no legal liability." *Bennett v. Biernacki*, 2022-Ohio-4449, ¶ 11, 204 N.E.3d 39, 42 (Ohio Ct. App. 2022) (quoting *Uhl v. Thomas*, 12th Dist. Butler No.

10

CA2008-06-131, 2009-Ohio-196, 2009 WL 119844, ¶ 10); *Ests. of Morgan v. Fairfield Fam. Counseling Ctr.*, 1997-Ohio-194, 77 Ohio St. 3d 284, 293, 673 N.E.2d 1311, 1319 (Ohio 1997) ("It is by now an axiom that duty is an essential element of a cause of action for negligence."). The "threshold question" of whether a duty exists is "a question of law." *Barnett v. Beazer Homes Invs., L.L.C.*, 180 Ohio App. 3d 272, 278 (Ohio Ct. App. 2008) (citing *Midwestern Indemn. Co. v. Wiser*, 144 Ohio App. 3d 354, 358 (Ohio Ct. App. 2001)); *Basar v. Steel Serv. Plus*, No. 77091, 2000 WL 502875, at *2 (Ohio Ct. App. Apr. 27, 2000) ("Whether a duty exists is a question of law for the court to determine.").

Generally, "[t]he common law duty of care is the degree of care that is ordinarily exercised by a reasonable and prudent person under the same or similar circumstances to avoid injuring others." *Moore v. Covenant Care Ohio, Inc.*, 2014-Ohio-4113, ¶ 44, 18 N.E.3d 1260, 1270 (Ohio Ct. App. 2014), *cause dismissed,* 2015-Ohio-1332, ¶ 44, 142 Ohio St. 3d 1418, 28 N.E.3d 119. By contrast, "there is no duty to act affirmatively for another's aid or protection absent some 'special relation' which justifies the imposition of a duty." *Ests. of Morgan* at 293; *Slagle v. White Castle Sys., Inc.*, 79 Ohio App.3d 210, 216, 607 N.E.2d 45 (Ohio Ct. App. 1992) (explaining that, typically, a person has no duty to act affirmatively for the protection of others); *id.* at 216 ("A duty to act affirmatively for the protection of others may arise where there is a special and definite relationship between the parties such that the law will impose a duty to act.").

Ohio courts follow the Second Restatement for determining whether a "special relationship" exists. *Godwin v. Facebook, Inc.*, 2020-Ohio-4834, ¶ 21, 160 N.E.3d 372, 380–81 (Ohio Ct. App. 2020). Generally, a "special relationship" exists "when one takes charge of a person whom he knows or should know is likely to cause bodily harm to others if not controlled." *Id.* at ¶ 21-22. Under Ohio law, legally recognized "special relationships" include: "(1) common

11

carrier and its passengers, (2) innkeeper and guest, (3) possessor of land and invitee, (4) custodian and person in custody, (5) employer and employee, (6) parent and child, and (7) master and servant."  *Grant v. Spann*, 2015-Ohio-831, ¶ 12 (citing *Reddick v. Said,* 11th Dist. No.2011–L–067, 2012–Ohio–1885).

Ohio courts have not expanded the "special relationship" exception to businesses generally. Nor is there any authority holding that a "special relationship" exists between a bank (such as Huntington) and its customers.  Notably, in *RLFShop, LLC v. Am. Express Co.*, No. 3:17-cv-405, 2018 WL 4030544, at *6 (S.D. Ohio Aug. 23, 2018), the court rejected the plaintiffs' argument that a "special relationship" existed between them and PayPal in connection with allegedly fraudulent credit card transactions.  After reviewing the authority cited by the plaintiffs, the court concluded that where PayPal "did not interact directly with Plaintiffs" and merely "processed [the] transaction[s] in which someone else . . . allegedly defrauded Plaintiffs[,]" plaintiffs "do not allege the kind of special relationship that would impose a duty of care on PayPal." *RLFShop, LLC*, 2018 WL 4030544, at *6.

This is consistent with precedent in other jurisdictions where courts have consistently held that performing or facilitating financial transactions does not involve a "special relationship" or give rise to a duty as a matter of law.  *See, e.g.*, *Bibicheff v. PayPal, Inc.,* No. 2:17-cv-4679 (DRH)(AYS), 2020 WL 2113373, at *5 (E.D.N.Y. May 4, 2020) (holding plaintiff failed to state a claim for negligence based on unauthorized payments from credit card accounts using PayPal, reasoning that because PayPal had no special relationship with either plaintiff or her office manager, it did not owe plaintiff a duty to protect her from harm) *aff'd*, 844 F. App'x 394 (2d Cir. 2021) (summary order); *Bibicheff,* 844 F. App'x at 396 ("We agree with the district court that New York courts generally do not impose a duty on businesses to protect their customers from the acts

12

of third parties absent special circumstances not alleged here."); *Big Red Box, LLC v. Square, Inc.*, No. CV 3:18-758-SAL-SVH, 2020 WL 465928, at \*12 (D.S.C. Jan. 22, 2020) (finding that defendant did not owe a duty arising out of defendant's processing of fraudulent credit card transactions, since plaintiff did not allege a "special relationship" between either plaintiff or the fraudster and defendant); *Meisner v. JPMorgan Chase Bank, N.A.*, No. 220CV01766KJMCKD, 2020 WL 7024212, at \*1 (E.D. Cal. Nov. 30, 2020) ("California law is clear that a bank is under no duty to supervise the activity of account holders.") (quoting *Spa-Kur Therapy Dev., Inc. v. Bank of Am., N.A.,* No. 18-522, 2019 WL 1099834, at \*2 (S.D. Cal. Mar. 8, 2019)).

The reasoning in these cases applies equally here. There is no basis in law or fact for finding the existence of a "special relationship" that would give rise to a duty of care between Plaintiff and EWS. Instead, EWS acts only as a facilitator of payments between participating banks. It is not in a position to determine whether a given transaction is in the customer's best interest or whether the person requesting a transaction using an access device provided by the bank is authorized to do so. Because no "special relationship" exists here, EWS did not owe Plaintiff a duty under Ohio law and Plaintiff has failed to state a claim for negligence. Because this fatal defect cannot be cured by amendment, the claim should be dismissed with prejudice.

(ii)     EWS Did Not Cause Plaintiff's Alleged Loss.

Even if EWS somehow owed Plaintiff a duty to "protect his account" and "properly investigate claims of fraud"—which it unequivocally does not—Plaintiff's negligence claim would fail in any event because the Complaint does not adequately plead the requisite element of causation.

To establish the requisite element of causation on a claim for negligence, a plaintiff must plead and prove that the defendant's conduct was the "the direct and proximate cause of the injury." *Ross v. Nutt*, 177 Ohio St. 113, 114, 203 N.E.2d 118, 120 (Ohio 1964). "For an act to be

13

the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of such act." *Id*. Ohio courts use the "but for" test for proximate causation. *Rieger v. Giant Eagle, Inc.*, 2019-Ohio-3745, ¶ 12, 157 Ohio St. 3d 512, 516, 138 N.E.3d 1121, 1126 (Ohio 2019). "A defendant's conduct is the cause of the harm if the harm would not have occurred but for the defendant's act or failure to act." *Id*.

Here, Plaintiff does not and cannot establish the requisite element of causation as to EWS. As set forth above, Plaintiff alleges that his ex-girlfriend Talanda Woods fraudulently obtained his Huntington account information and initiated the various unauthorized transfers. EWS *did not* provide Plaintiff with the at issue account and *did not* make the at issue transfers. Nor does EWS have the ability to determine whether a transaction conducted by someone with access to a customer's bank account is authorized or not. Further, EWS had *no* responsibility or role in the investigation by Huntington or its determination as to whether the disputed transactions were unauthorized. By Plaintiff's own allegations, Plaintiff's losses were caused by Ms. Woods, and any duty to reimburse Plaintiff for unauthorized transactions rests with Huntington. Simply put, EWS did not cause any of the alleged losses.

(iii)     Ohio's Economic Loss Rule Bars Plaintiff's Negligence Claim.

Under Ohio's economic loss rule, "[t]he well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 106 Ohio St. 3d 412, 414, 2005-Ohio-5409, ¶ 6, 835 N.E.2d 701, 704 (Ohio 2005) (quotations and citations omitted); *Wells Fargo Bank, N.A. v. Fifth Third Bank*, 931 F. Supp. 2d 834, 840 (S.D. Ohio 2013) ("Under Ohio law, 'the economic loss rule generally prevents recovery in tort of damages for purely economic loss.'" (quoting *id*.)). The economic loss rule "is based on the principle that . . . there is no duty to exercise reasonable care to avoid intangible economic loss or

14

losses to others that do not arise from tangible physical harm to persons and tangible things." *Potts v. Safeco Ins. Co.*, 2010-Ohio-2042, ¶ 19; *see also Corporex*, 106 Ohio St. 3d at 414 ("Tort law is not designed . . . to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement."). "The economic-loss rule applies in a tort action when, as here, economic loss is unaccompanied by personal injury or property damage." *Long v. Time Ins. Co.*, 572 F. Supp. 2d 907, 911 (S.D. Ohio 2008); *RWP, Inc. v. Fabrizi Trucking & Paving Co.*, 2006-Ohio-5014, ¶ 20 ("[E]conomic losses are intangible losses that do not arise from tangible physical harm to persons or property.").

Although the economic loss doctrine originated in products liability actions, Ohio courts have applied the doctrine in various contexts, including in actions by bank customers alleging negligent handling of their funds. *See, e.g.*, *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 569 (6th Cir. 2006) (affirming decision barring customer's negligence claim for failing to administer her account with ordinary care and to safe-keep her investment assets under Ohio's economic-loss rule because bank did not owe plaintiff an independent tort duty to avoid purely economic loss); *Spivak v. Huntington Nat'l Bank*, No. 1:20 CV 1244, 2020 WL 6162586, at *4 (N.D. Ohio Oct. 21, 2020) (holding that economic loss doctrine barred negligence claim against bank based on allegation that teller applied payment to incorrect loan). In these cases, the courts determined that the relationship between the customer and the bank was governed by the parties' agreement, and thus plaintiffs could only seek economic damages through a claim for breach of contract.

Under Ohio law, the economic loss doctrine applies regardless of whether the parties are in contractual privity. In the seminal case of *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, a project owner sought to recover economic damages in tort from a subcontractor related to a hotel construction project. The project owner had no direct contract or interaction with the

15

subcontractor, and therefore could not sue the subcontractor directly for breach of contract. In reversing the appellate court's reinstatement of the project owner's negligence claim, the Ohio Supreme Court made clear that the economic loss doctrine barred the project owner's tort claims against the subcontractor. In so holding, the Court stated: "We will not adopt a rule that ignores basic tort law and thwarts the intentions of parties to a contract, who must be allowed to bargain freely to allocate the risks attendant to their undertaking, including the possibility of purely economic damages." *Corporex Dev. & Constr. Mgt., Inc.* 2005-Ohio-5409, ¶ 11.

Here, Plaintiff's negligence claim against EWS is plainly barred. Plaintiff's action seeks the recovery of economic damages arising out of his contractual relationship with Huntington. The Service Addendum between Huntington and its customers expressly addresses use of the Zelle network to send and receive payments, including by allocating risk among the parties for both authorized and unauthorized transactions. *See generally* RJN Exs. 1 & 2; *id.*, Ex. 2 at §§ 14, 15. The Service Addendum also expressly advises that transactions are not reviewed or verified by either Huntington or EWS. *Id.*, Ex. 2 at § 11. Under the economic loss doctrine, Plaintiff cannot circumvent the binding contractual allocation of risk between he and Huntington and seek recovery for purely economic damages by suing EWS on a negligence theory. Accordingly, Ohio's economic loss rule bars Plaintiff's negligence claim against EWS in its entirety.

In sum, Plaintiff's negligence claim fails as a matter of law for several reasons: EWS did not own Plaintiff a duty of care; EWS did not breach any alleged duty or cause Plaintiff any injury; and any claim for negligence based on the conduct alleged in the Complaint is barred by Ohio's economic loss rule.

## IV. CONCLUSION

For the foregoing reasons, EWS respectfully requests that the Court grant the Motion in its entirety and dismiss Plaintiff's claims against EWS with prejudice.

16

Dated: February 7, 2025

Respectfully submitted,

/s/ *Marisa T. Darden*

**Benesch Friedlander Coplan & Aronoff LLP**
Marisa T. Darden
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Telephone: 216-363-4440
Facsimile: 216-363-4588
Email: MDarden@beneschlaw.com

**STEPTOE LLP**
Christopher R. Fredrich (*pro hac vice* forthcoming)
cfredrich@steptoe.com
2029 Century Park East, Suite 980
Los Angeles, California 90067-3086
Telephone: (213) 439-9400
Facsimile: (213) 439-9598
Email: docketing@steptoe.com

Jamie Noonan Witte (*pro hac vice* forthcoming)
jwitte@steptoe.com
227 West Monroe, Suite 4700
Chicago, IL  60606
Telephone: (312) 577-1300

*Attorneys for Defendant Early Warning Services, LLC*

17

## **LOCAL RULE 7.1 CERTIFICATION**

This case has not yet been assigned a track and is therefore currently on a standard case track.  This memorandum adheres to the page limitation of no more than twenty (20) pages set forth in Local Rule 7.1(f) for standard track cases.

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed on February 7, 2025, with the

Clerk of the Court using the CM/ECF system. A true and accurate copy of the foregoing was also

served by US Mail upon Plaintiff at the following address:

Brian Lumbus, Jr.
Northeast Ohio Correctional Center
2240 Hubbard Road
Youngstown, OH 44505

*Pro Se*

/s/ Marisa T. Darden

*One of the Attorneys for Defendant Early Warning Services, LLC*